# CAUSES ARGUED AND DETERMINED

IN THE

# United States District Court

FOR THE

## District of Hawaii.

### UNITED STATES OF AMERICA v. YONG HO.

DECIDED: AUGUST 19, 1900.

1. Chinese in the Hawaiian Islands on June 14, 1900, when the "Act to provide a government for the Territory of Hawaii" went into effect, were by Section 101 thereof, compelled to procure the certificate of residence required by the Act of Congress approved May 5, 1892, as amended by the Act of Congress approved November 3, 1893, entitled "An Act to amend an Act entitled 'An Act to prohibit the coming of Chinese persons into the United States, approved May 5, 1892,'" within one year from the said 14th day of June, 1900, or in default thereof be deemed to be unlawfully within the United States.

2. There is no provision in the Act of Congress of April 30, 1900, providing a government for the Territory of Hawaii, permitting the return to Hawaii of Chinese laborers who had voluntarily left the Hawaiian islands after annexation and before said Act went into effect, but with intent to return. Congress must be presumed to have known that there might be many such Chinese, and having made no provision for their return and registry after June 14, 1900, or the issuance of a certificate of residence to them, it is clear that they should be excluded.

3. Where a Chinese laborer left the Hawaiian Islands in October, 1899, after annexation, but before the Act for the government of the Territory went into effect, and did not return within the year mentioned in the certificate entitling him to return, but returned twenty-one months after his departure, and claimed admission under said certificate, Held, that he does not come within the provisions of Section 101 of the Act of April 30, 1900, as he was not "in the Hawaiian Islands" when the Act for the government of the Territory went into effect, and he is not entitled to come into the Territory to register as a Chinese laborer.

1—U. S. D.

CHINESE EXCLUSION LAWS.  PROCEEDING TO DEPORT.

*J. J. Dunne,* Assistant U. S. District Attorney for the plaintiff.

*T. McCants Stewart* and *W. A. Whiting,* attorneys for defendant.

ESTEE, J.  This is a proceeding heard before the Court, for the deportation of one Yong Ho, a Chinese laborer, arrested upon the information of W. R. Hendry, Deputy Marshal of the United States for the District of Hawaii, on the ground that said Yong Ho is a Chinese laborer and now within the limits of the United States and the District of Hawaii, without the certificate of residence required by the Act of Congress approved May 5th, 1892, and the Act of November 3rd, 1893, amendatory thereof, and the Act of Congress approved April 30th, 1900, providing a government for the Territory of Hawaii.

It is prescribed by the Act of Congress approved April 30th, 1900, and entitled an "Act to provide a government for the Territory of Hawaii," (Vol. 31, U. S. Stats., page 141), and especially by section 101 of said Act—

"That Chinese in the Hawaiian Islands when this Act takes effect, may within one year thereafter obtain certificates of residence as required by 'An Act to prohibit the coming of Chinese persons into the United States,' approved May fifth, eighteen hundred and ninety-two, as amended by an Act approved November third, eighteen hundred and ninety-three, entitled 'An Act to amend an Act entitled an 'Act to prohibit the coming of Chinese persons into the United States,' approved May fifth, eighteen hundred and ninety-two,' and until the expiration of said year shall not be deemed to be unlawfully in the United States if found therein without such certificates. * * *"

This Act took effect June 14th, 1900.

On the principle of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of all others) it is clear that no Chinaman not in the Hawaiian Islands when the

foregoing Act went into effect was entitled to a certificate of residence.

Section 6 of the Act of Congress of May 5th, 1892, as amended by the Act of November 3rd, 1893, and which Acts are in terms made applicable to this Territory, prescribes that:—

"It shall be the duty of all Chinese laborers within the limits of the United States, who were entitled to remain in the United States before the passage of the Act to which this is an amendment, to apply to the Collector of Internal Revenue of their respective districts within six months after the passage of this Act for a certificate of residence; and any Chinese laborer within the limits of the United States. who shall neglect, fail or refuse to comply with the provisions of this Act, and the Act to which this is an amendment, or who, after the expiration of said six months shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by any United States  *  *  *  Marshal or his deputies, and taken before a United States Judge, whose duty it shall be to order that he be deported from the United States  *  *  *  unless he shall prove to the satisfaction of said Judge that by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate and to the satisfaction of said United States Judge, and by at least one credible witness other than Chinese, that he was a resident of the United States on the 5th day of May, eighteen hundred and ninety-two" (the day said Act took effect.)

This being amended by the Act for the government of the Territory of Hawaii, the time was extended within which Chinese laborers resident in the Hawaiian Islands could procure said certificates of residence to one year from the 14th day of June, 1900.

It will be seen that Chinese who were "in the Hawaiian Islands" on the 14th day of June, 1900, were by law compelled to comply with the terms of Section 101 of the Act of April 30th, 1900, and in accordance with the provisions of Section 6

of the Act of May 5th, 1892, as amended by the Act of November 3rd, 1893, obtain the certificate of residence within twelve months therefrom or be subject to deportation, unless they could clearly establish to the satisfaction of the Judge "that by reason of accident, sickness or other unavoidable cause" they were unable to secure the same; and at the same time establishing to the satisfaction of said Judge, and "by at least one credible witness other than Chinese," that they were residents of the Territory on the said 14th day of June, 1900, when the Act went into effect.    What are the facts in this case?            ⌋

The defendant left the Hawaiian Islands after annexation in October, 1899, and went to China, returning sometime in July, 1901, nearly two years thereafter, and so he was therefore not a resident of the Territory on the 14th day of June, 1900.    His excuse for not returning within the year provided for in his certificate of return was that he had rheumatism and could not for that reason return sooner.

But the sickness shown was a reason given for the delay to return within the year required by his return certificate, not the sickness contemplated by Section 6 of the Act of November 3rd, 1893, as a reason for a delay in registering as a Chinese laborer within the limits of the United States at the time the Act went into effect.

The Courts have uniformly sustained the Chinese Exclusion Laws.    Chinese exclusion is simply the exercise of exclusive national jurisdiction within the territory of this nation.    As was said by Chief Justice Marshall, as far back as in the case of *The Schooner Exchange v. McFadden, et al.*, reported in 7th Cranch, U. S. 116.

"The jurisdiction of the nation within its own Territory is necessarily exclusive and absolute."

In the case of *Chae Chang Ping v. United States*, reported in 130 U. S. 581, the Supreme Court of the United States held that—

"A certificate issued to a Chinese laborer under the    *    *    *    Act of May 6th, 1882,    *    *    *    conferred upon him no

right to return to the United States of which he could not be deprived by a subsequent Act of Congress." The Act of June 14, 1900, is such subsequent Act.

To the same point also is the more recent case of *Fong Yue Sing v. United States*, found in 149 U. S., page 698, where the Court say:

"That Congress could during the absence of a Chinese laborer who had formerly been in the United States, and had departed therefrom with a return certificate, pass a law restraining said Chinese laborer from returning."

And that is practically what has been done in this case.

It is conceded that Yong Ho, the defendant, was not "one of the Chinese in the Hawaiian Islands" when the Act of Congress of April 30th, 1900, went into effect, to-wit: June 14th, 1900. That being so he could not register even if he had returned in time according to the language of the statute. The law does not permit him to come into the country to get a certificate that he is a resident laborer. There is no reservation in the Act of April 30th, 1900, permitting the return of Chinese laborers who had voluntarily left the Hawaiian Islands after annexation with the intent to return. \Congress must be assumed to have known that there might be many such Chinese, but having made no provision for their return after June 14th, 1900, or the issuance of a residence certificate to them, it is clear they should be excluded.

Yong Ho comes squarely within this class, and being a Chinese laborer within the limits of the United States and the District of Hawaii, without the registration certificate required, he possesses no right to remain here. And while it may be that a hardship is seemingly worked in this case, yet the permission to come here accorded to Chinese laborers is simply a privilege, not a right, which Congress can withdraw by any subsequent legislation. The Courts have no power to modify or change this regulation. As was said in the case of *Li Sing v. United States*, 180 U. S. 486, 495,

"We cannot yield by modifying or relaxing by judicial construction the severity of the statute under consideration."

Let the defendant be remanded to the custody of the Marshal with instructions to deport him to the country from whence he came.